1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHYSICIAN'S SURROGACY, INC., | Case No.: 17CV0718-MMA (WVG) |
| Plaintiff, | **ORDER RE DEFENDANTS' MOTIONS TO DISMISS, MOTIONS TO STRIKE, AND PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| KENIA GERMAN; GLORY NASH; VERONICA MUNOZ; JESSICA SIMAS; XOCHITL RACHELLE MACIAS; CLAUDIA ESCAMILLA; KARLA JIMENEZ; RAFAEL MARTINEZ; and ESMERALDA LEON, | [Doc. Nos. 4, 13, 14, 15, 16, 17, 18, 19] |
| Defendants. | |

On April 7, 2017, Plaintiff Physician's Surrogacy, Inc. filed this action alleging multiple causes of action against Defendants Kenia German, Glory Nash, Veronica Munoz, Jessica Simas, Xochitl Rachelle Macias, Claudia Escamilla, Karla Jimenez, Rafael Martinez, and Esmeralda Leon. *See* Doc. No. 1. Via five separate motions to dismiss, Defendants move to dismiss Plaintiff's claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5). *See* Doc. Nos. 4, 14, 15, 17, 19. Also, Defendants German and Leon move to strike state law claims pursuant to California's anti-SLAPP statute, California Code of Civil Procedure § 425.16. *See* Doc. Nos. 16, 18. Lastly, Plaintiff moves for a preliminary injunction. *See* Doc. No. 13. The Court took the matters under submission on the briefs and without oral argument pursuant to Civil Local Rule 7.1.d.1. For the following reasons, the Court **QUASHES** service as to Defendants Escamilla, Jimenez, Martinez, and German, and **DENIES AS MOOT** their motions to dismiss, Doc. Nos. 14, 15, and Defendant German's motion to

strike, Doc. No. 16.  The Court **GRANTS IN PART** Defendants' Nash, Simas, and Munoz's motion to dismiss, Doc. No. 4, and **GRANTS IN PART** Defendants Leon and Macias's motions to dismiss, Doc. Nos. 17, 19.  Specifically, the Court **DISMISSES** Plaintiff's federal claims as to all properly served defendants, and declines to exercise supplemental jurisdiction over all state law claims asserted against all properly served defendants.  Further, the Court **DENIES** without prejudice Defendant Leon's motion to strike, Doc. No. 18, and **DENIES** without prejudice Plaintiff's motion for a preliminary injunction, Doc. No. 13.

## BACKGROUND

Plaintiff makes the following allegations.[1]  Plaintiff Physician's Surrogacy, Inc. is a "private fertility and surrogacy agency located in San Diego, California, recruiting surrogates and other donors so that a medical corporation may provide in vitro fertilization and surrogacy and egg donation services for intended parents who can select from a qualified pool of surrogates."  Doc. No. 1, Compl. ¶ 15.  Plaintiff has a "unique affiliation with a medical corporation, Reproductive Sciences Medical Center, Inc.," ("RSMC") which allows Plaintiff and RSMC to provide "an integrated service where agency and surrogate recruiting services are seamlessly integrated with fertility medical procedures to match surrogates and intended parents for procedures such as surrogacy, egg donation and fertility treatment."  Compl. ¶ 15.  Based on this close affiliation, Plaintiff and RSMC "are commonly referred to collectively as 'RSMC.'"  Compl. ¶ 15.  A "key aspect of Plaintiff's business" is the recruitment of potential surrogate mothers.  Compl. ¶ 16.  Plaintiff "hires recruiters to consult, recruit, screen and supervise applications by potential surrogate mothers."  Compl. ¶ 17.  Plaintiff earns revenue from payment by the intended parents who assume parenting responsibilities for the baby

---

[1] For the purposes of determining the pending motions to dismiss, the Court must accept as true the allegations set forth in the Complaint.  *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).  However, in doing so, the Court does not make any findings of fact.

1    immediately upon birth."  Compl. ¶ 21.

2        Plaintiff has expended "significant time and resources creating and developing
3    proprietary business methods and systems for surrogate intake and recruiting as well as
4    various work product related to intake, including, but not limited to, surrogacy
5    applications, screening forms, and surrogacy case checklists."  Compl. ¶ 19.  For that
6    reason, Plaintiff requires employees to sign the Proprietary Information and Innovation
7    Assignment Agreement ("PIIAA"), which "identifies Plaintiff's proprietary information
8    and trade secrets," such as Plaintiff's "surrogate lists," and requires employees to
9    maintain the confidentiality of that information, both during and after employment.
10   Compl. ¶¶ 20, 51.  The PIIAA also prohibits employees, during the term of their
11   employment, from "engag[ing] in any employment or business activity which is
12   competitive with, or would otherwise conflict with, [the employees'] employment"
13   without Plaintiff's "express written consent."  Compl. ¶ 52.  Further, for one year after
14   the date of termination of their employment with Plaintiff, the PIIAA prohibits former
15   employees from soliciting or attempting to solicit any of Plaintiff's employees to
16   terminate their employment with Plaintiff, or inducing or attempting to induce any person
17   or entity "to terminate a relationship with" Plaintiff "or interfere with [Plaintiff's]
18   business relationships."  Compl. ¶ 55.  The PIIAA also prohibited the use of "Proprietary
19   Information to solicit or attempt to solicit the business of any customer . . . of the
20   Company" who, "at the time of termination or one (1) year immediately prior thereto,
21   was doing business with the Company, or listed on the Company's customer . . . list, if
22   the result of the solicitation of business would be any reduction in the business which
23   would have been transacted between the Company and such [entity]."  Compl. ¶ 55.

24       Defendant German began working for Plaintiff as a recruiter on April 1, 2016, and
25   was promoted to a "Senior Surrogacy Recruiter" shortly thereafter.  Compl. ¶ 22.  In that
26   position, Defendant German "supervised recruiting, screening, and approval of
27   applications by potential surrogates, as well as the overall surrogacy process once
28   surrogates were approved and had signed contracts with Plaintiff."  Compl. ¶ 22.

1   Defendant German "worked with a team of subordinate employees," including

2   Defendants Nash, Simas, Macias, and Munoz.  Compl. ¶ 22.  "Immediately after her

3   employment commenced in the spring of 2016," Defendant German formulated a plan to

4   terminate her employment with Plaintiff and form a competitive surrogacy agency.

5   Compl. ¶ 23.  Defendant "conspired with the other Defendants in this action" to do so.

6   Compl. ¶ 23.

7       Beginning on approximately April 5, 2016, "Defendants misappropriated a

8   significant amount of [Plaintiff's] proprietary information and trade secrets."  Compl. ¶¶

9   24, 25.  "All of Plaintiff's information regarding applications, screening, identification of

10  surrogates and matching with intended parents is stored on Plaintiff's computer systems,

11  including its own server."  Compl. ¶ 18.  Accordingly, Defendants emailed the

12  proprietary information "from [Plaintiff's] computers and work email accounts, to an

13  outside Gmail email address at rsmcsurrogacy@gmail.com, which Ms. German (and/or

14  the other Defendants) created in or around early 2016."  Compl. ¶ 24.  For example,

15  "Defendants emailed lists of Plaintiff's surrogates and potential surrogates, as well as

16  Plaintiff's proprietary business forms, including intake forms, surrogacy applications and

17  other proprietary documents."  Compl. ¶ 24.  Also, on or around April 29, 2016,

18  Defendant German sent emails to an email address belonging to her husband, Defendant

19  Martinez, with copies of proprietary information such as "email templates for various

20  surrogacy-related scenarios, surrogacy FAQs, intake forms, benefit lists and job

21  descriptions."  *See* Compl. ¶ 24.  Defendant Martinez bought computer hardware to store

22  the information.

23      At some point, Defendants Escamilla and Jimenez, who are Defendant German's

24  sisters-in-law, began to use the email address "rsmcsurrogacy@gmail.com" to email

25  Plaintiff's potential surrogates and surrogates who had already entered into contracts with

26  Plaintiff.  Defendants told the recipients that the email address was a new address for

27  Plaintiff, and solicited information from them under the pretenses that they were acting

28  on Plaintiff's behalf.  In those emails, the sender was listed as "RSMC Fertility."  *See*

Compl. § 26.  Defendants chose to use "RSMC" in the name of the sender and in the email address in order to "intentionally confuse Plaintiff's surrogates and potential surrogates" into thinking that they were communicating with Plaintiff's employees.  *See* Compl. ¶ 26.  Further, Defendant Escamilla signed her name on emails as "Assitant [sic] to Kenia German, Surrogate Program Director, and included Plaintiff's RSMC logo and address."  *See* Compl. ¶ 28.  Plaintiff alleges that Defendants ultimately used the email address to "induce surrogates to breach their Acceptance Agreements with Plaintiff" and persuade them to instead act as surrogates for Defendants' competing business.  *See* Compl. ¶ 30.

On approximately December 20, 2016, Defendants German and Martinez "filed for a fictitious business name of 'Elite Women Surrogacy' with the County of Orange Clerk-Recorder."  *See* Compl. ¶ 29.  Defendants also created a Facebook page for Elite Women Surrogacy, which "states that the business launched on November 12, 2016."  *See* Compl. ¶ 29.

In February 2017, Defendant German resigned from her position with Plaintiff, and Defendants Nash, Simas, Macias, and Munoz followed suit "within a few weeks."  *See* Compl. ¶ 25.  Following their resignations, Defendants began operating Elite Women Surrogacy "in full force."  *See* Compl. ¶ 31.  Since her resignation, Defendant German has allegedly "refused to return certain property of Plaintiff's, including a company credit card, office keys, an electronic key card and a cell phone."  *See* Compl. ¶ 125.

Further, Plaintiff alleges Defendants have "started a smear campaign against Plaintiff."  *See* Compl. ¶ 32.  For example, on the Facebook page for Elite Women Surrogacy, Defendant German wrote a post describing "getting hired by Plaintiff," and stated that the agency "look[ed] nice" but was "terribly wrong."  *See* Compl. ¶ 32.  The post criticized Plaintiff's owner, calling her greedy and arrogant, and stating that the owner was willing to accept surrogates that were 18 years old or had "bad medical records."  *See* Compl. ¶ 32.  In the post, Defendant German stated that upon leaving Plaintiff's employ, Defendant "received vicious attacks from the owner" as well as

1    threatening emails and phone calls.  *See* Compl. ¶ 32.  Additionally, Defendant Leon

2    allegedly "posted reviews online" falsely stating "that she received a letter from Plaintiff

3    to her regarding enforcement of her surrogacy contract" and which demanded payment.

4    *See* Compl. ¶ 138.  Defendant included a photograph of a letter in an online review on

5    Yelp, but Plaintiff denies ever sending it.  In the Yelp review, Defendant stated that

6    Plaintiff "would rather see you suffer through your [surrogacy] journey than care for

7    you!"  *See* Compl. ¶ 138.

8         Based on the foregoing, the Complaint asserts the following causes of action

9    against all Defendants: violation of the Economic Espionage Act ("EEA"), 18 U.S.C. §

10   1831 *et seq*., as amended by the Defend Trade Secrets Act of 2016 ("DTSA"), PL 114-

11   153, May 11, 2016, 130 Stat 376;[2] intentional interference with contractual relations;

12   inducing breach of contracts; intentional interference with prospective economic

13   relations; negligent interference with prospective economic relations; violation of the

14   California Comprehensive Computer Data Access and Fraud Act, Cal. Pen. Code § 502;

15   violation of the California Business and Professions Code, Cal. Bus. & Prof. Code §

16   17200; conversion; and civil conspiracy.  The Complaint also alleges: breach of contract

17   claims against Defendants German, Nash, Simas, Macias, and Munoz; claims for

18   violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, against Defendants

19   German, Nash, Simas, Macias, Munoz, Escamilla, Jimenez, and Martinez; claims for

20   breach of the duty of loyalty against Defendants German, Nash, Simas, Macias, and

21   Munoz; a cause of action for "claim and delivery" against Defendant German; and trade

22   libel claims against Defendants German and Leon.

### PROCEDURAL BACKGROUND

24        Defendants have filed several motions to dismiss, and two motions to strike.

25   Specifically, Defendants Nash, Simas, and Munoz move to dismiss the following claims

26   pursuant to Rule 12(b)(6) for failure to state a claim: violation of the DTSA; breach of

---

[2] Hereinafter, for the purposes of this Order, the Court refers to this cause of action as the DTSA claim.

1  contract; intentional interference with contractual relations; inducing breach of contracts;

2  intentional interference with prospective economic relations; negligent interference with

3  prospective economic relations; violation of the Computer Fraud and Abuse Act;

4  violation of California's Comprehensive Computer Data Access and Fraud Act; breach of

5  the duty of loyalty; violation of California's Business and Professions Code; conversion;

6  and civil conspiracy.  *See* Doc. No. 4.

7      Defendants Escamilla, Jimenez, and Martinez join the motion to dismiss filed by

8  Defendants Nash, Simas, and Munoz insofar as it requests dismissal of the following

9  claims: violation of the DTSA; intentional interference with contractual relations;

10  inducing breach of contracts, intentional interference with prospective economic

11  relations; negligent interference with prospective economic relations; violation of

12  California's Business and Professions Code; and conversion.  *See* Doc. No. 14.

13  Defendants Escamilla, Jimenez, and Martinez also move to dismiss Plaintiff's claim for

14  violation of the Computer Fraud and Abuse Act,[3] and seek dismissal of all claims against

15  them for insufficient service of process pursuant to Rule 12(b)(5).

16      Defendant German has also filed a motion to dismiss, joining Defendants Nash,

17  Simas, and Munoz's motion to dismiss in its entirety, as well as moving to dismiss

18  Plaintiff's trade libel claim, and seeking dismissal for insufficient service of process

19  under Rule 12(b)(5).  *See* Doc. No. 15.

20      Additionally, Defendant Leon filed a motion to dismiss, joining Defendants Nash,

21  Simas, and Munoz's motion to dismiss insofar as it seeks dismissal of the following

22  claims: violation of the DTSA; intentional interference with contractual relations;

23  inducing breach of contracts; intentional interference with prospective economic

24  relations; negligent interference with prospective economic relations; breach of duty of

25  loyalty; violation of California's Business and Professions Code; conversion; and civil

26  conspiracy.  *See* Doc. No. 17.  Defendant Leon also moves to dismiss Plaintiff's claim for

27  _____

28  [3] The Complaint asserts two separate claims for violation of the Computer Fraud and Abuse Act.

1   trade libel.

2       Further, Defendant Macias filed a motion to dismiss stating that she joins

3   Defendants Nash, Simas, and Munoz's motion to dismiss in its entirety.  *See* Doc. No. 19.

4       Also, Defendants German and Leon move to strike Plaintiff's trade libel claims

5   pursuant to California's anti-SLAPP statute.  *See* Doc. Nos. 16, 18.

6       Finally, Plaintiff moves for a preliminary injunction based on its claims for

7   violation of the DTSA, violation of California's Business and Professions Code, breach

8   of contract, and conversion.  *See* Doc. No. 13.

9                           LEGAL STANDARD

10      **A.    Rule 12(b)(5) Motion to Dismiss for Insufficient Service of Process**

11      Federal Rule of Civil Procedure 4 governs service of process.  *See* Fed. R. Civ. P.

12  4.  "A federal court does not have jurisdiction over a defendant unless the defendant has

13  been served properly under [Rule] 4."  *Direct Mail Specialists, Inc. v. Eclat*

14  *Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).  However, "Rule 4 is a

15  flexible rule that should be liberally construed so long as a party receives sufficient notice

16  of the complaint."  *Vasic v. Patent Health, L.L.C.*, No. 13CV849 AJB (MDD), 2013 WL

17  12076475, at *2 (S.D. Cal. Nov. 26, 2013) (quoting *United Food & Commercial Workers*

18  *Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984)).  Nevertheless, "neither

19  actual notice nor simply naming the defendant in the complaint will provide personal

20  jurisdiction."  *Id.* (quoting *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986)).

21      Pursuant to Federal Rule of Civil Procedure 12(b)(5), a defendant may move to

22  dismiss or quash service for insufficient service of process, thereby challenging "the

23  sufficiency of the manner of attempted service."  *See Perrotte v. Johnson*, No. 1:15-cv-

24  00026-LJO-SAB (PC), 2016 WL 4440972, at *4 (E.D. Cal. Aug. 19, 2016).  "Where

25  service of process is insufficient, the court has broad discretion to dismiss the action or to

26  retain the case but quash the service that has been made on defendant."  *See Cranford v.*

27  *United States*, 359 F. Supp. 2d 981, 984 (E.D. Cal. 2005).  "Ordinarily," the court will

28  "quash service and require [the] plaintiff to effect proper service."  *See Agricola ABC,*

1  *S.A. de C.V. v. Chiquita Fresh N. Am., LLC*, No. 10CV772-IEG NLS, 2010 WL 4809641,

2  at *3 (S.D. Cal. Nov. 19, 2010).

3  **B.      Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

4  A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro*

5  *v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A pleading must contain "a short and plain

6  statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P.

7  8(a)(2).  However, plaintiffs must also plead "enough facts to state a claim to relief that is

8  plausible on its face."  Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

9  570 (2007).  The plausibility standard thus demands more than "a formulaic recitation of

10  the elements of a cause of action," or "naked assertions devoid of further factual

11  enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

12  Instead, the complaint "must contain allegations of underlying facts sufficient to give fair

13  notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652

14  F.3d 1202, 1216 (9th Cir. 2011).

15  In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth

16  of all factual allegations and must construe them in the light most favorable to the

17  nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

18  The court need not take legal conclusions as true merely because they are cast in the form

19  of factual allegations.  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

20  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to

21  defeat a motion to dismiss."  *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

22  In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not

23  look beyond the complaint for additional facts.  *United States v. Ritchie*, 342 F.3d 903,

24  908 (9th Cir. 2003).  "A court may, however, consider certain materials—documents

25  attached to the complaint, documents incorporated by reference in the complaint, or

26  matters of judicial notice—without converting the motion to dismiss into a motion for

27  summary judgment."  *Id.*; *see also* Fed. R. Evid. 201; *see also Lee v. City of Los Angeles*,

28  250 F.3d 668, 688 (9th Cir. 2001) *overruled on other grounds by Galbraith v. Cnty. Of*

1    *Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

2        Where dismissal is appropriate, a court should grant leave to amend unless the

3    plaintiff could not possibly cure the defects in the pleading.  *Knappenberger v. City of*

4    *Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

5        **C.    Motion to Strike**

6        California's anti-SLAPP[4] statute provides a mechanism for striking "lawsuits

7    brought primarily to chill the valid exercise of the constitutional rights of freedom of

8    speech and petition for the redress of grievances."  *See* Cal. Code. Civ. P. § 425.16.

9    "Motions to strike a state law claim under California's anti-SLAPP statute may be

10   brought in federal court," whether the court is sitting in diversity or exercising federal

11   question jurisdiction.  *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir.

12   2003) (citing *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d

13   963, 970–73 (9th Cir. 1999)).  However, California's anti-SLAPP statute does not apply

14   to federal law causes of action.  *See Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th

15   Cir. 2009).

16       "Resolution of an anti-SLAPP motion requires the court to engage in a two-step

17   process."  *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal.4th 728, 733 (2003) (internal

18   citations and quotations omitted).  First, the defendant must make a "threshold showing

19   that the challenged cause of action is one arising from protected activity."  *Id.*   Second,

20   to avoid dismissal, the plaintiff must demonstrate a probability of prevailing on the claim.

21   *Id.*

22       **D.    Motion for Preliminary Injunction**

23       "A preliminary injunction is an extraordinary remedy never awarded as of right."

24   *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008).  "A plaintiff seeking a

25   preliminary injunction must establish that he is" (1) "likely to succeed on the merits," (2)

26

27   ───────────────

28   [4] "SLAPP stands for strategic lawsuits against public participation."  *Ampex Corp. v. Cargle*, 128 Cal.
     App. 4th 1569, 1573 (2005).

1   "likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the

2   balance of equities tips in his favor," and (4) "that an injunction is in the public interest."

3   *Id.* at 20; *see JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1105 (9th

4   Cir. 2016) (stating that the plaintiff "bears the burden of establishing the merits of its

5   claims" on a motion for preliminary injunction).  The Ninth Circuit employs a "'sliding

6   scale' approach to evaluating the first and third *Winter* elements," which dictates that "a

7   preliminary injunction may be granted when there are 'serious questions going to the

8   merits and a hardship balance that tips sharply toward the plaintiff,' so long as 'the other

9   two elements of the *Winter* test are also met.'"  *See Ass'n des Eleveurs de Canards et

10  d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (quoting *Alliance for the

11  Wild Rockies v. Cottrell*, 632 F.3d at 1131–32 (9th Cir. 2011)).  "Serious questions" are

12  "substantial, difficult and doubtful, as to make them a fair ground for litigation and thus

13  for more deliberative investigation."  *See Republic of the Philippines v. Marcos*, 862 F.2d

14  1355, 1362 (9th Cir. 1988).  "Serious questions need not promise a certainty of success,

15  nor even present a probability of success, but must involve a 'fair chance of success on

16  the merits.'"  *Id.*

17      Further, "[i]n deciding a motion for preliminary injunction, the district court 'is not

18  bound to decide doubtful and difficult questions of law or disputed questions of fact.'"

19  *Int'l Molders' and Allied Workers' Local Union No. 164 v. Nelson,* 799 F.2d 547, 551

20  (9th Cir.1986) (citing *Dymo Indus., Inc. v. Tapewriter, Inc.,* 326 F.2d 141, 143 (9th

21  Cir.1964)).  But, if a court does make factual findings or legal conclusions "when

22  evaluating the merits of a preliminary injunction motion," those findings and conclusions

23  "are not binding at trial on the merits."  *See Purdum v. Wolfe*, No. C-13-04816 DMR,

24  2014 WL 171546, at *4 (N.D. Cal. Jan. 15, 2014) (quoting *Univ. of Tex. v. Camenisch,*

25  451 U.S. 390, 395 (1981)).

26  //

27  //

28  //

# DISCUSSION

### A.    Motions to Dismiss for Insufficient Service of Process

Defendants Escamilla, Jimenez, Martinez, and German move to dismiss all claims asserted against them for insufficient service of process pursuant to Rule 12(b)(5). *See* Doc. Nos. 14, 15. Rule 4(e) provides that an individual may be served by delivering a copy of the summons and complaint to the individual personally, "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," or delivering a copy of each to an agent authorized to accept service on the individual's behalf. *See* Fed. R. Civ. P. 4(e)(2). Or, a plaintiff may also "utilize the procedures of the state in which the district court is located to serve a summons and complaint." *See Agricola ABC, S.A. de C.V. v. Chiquita Fresh N. Am., LLC*, No. 10CV772-IEG NLS, 2010 WL 4809641, at *4 (S.D. Cal. Nov. 19, 2010); Fed. R. Civ. P. 4(e)(1). Under California law, where a plaintiff is unable to personally serve a defendant despite "reasonable diligence," a plaintiff may execute service by "leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household . . . at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail." *Id.* (quoting California Code of Civil Procedure § 415.20(b)).

"When a defendant challenges service, the plaintiff bears the burden of establishing the validity of service as governed by Federal Rule of Civil Procedure 4." *See Bernhoft Law Firm, S.C. v. Pollock*, No. 3:12-CV-1608 W-BLM, 2012 WL 5511777, at *1–2 (S.D. Cal. Nov. 14, 2012). A plaintiff may meet that burden by producing the proof of service, which courts typically accept as prima facie evidence of proper service. *Id.* However, a defendant may show, either by a defect apparent on the face of the proof of service, or by producing "affidavits, discovery materials, or other admissible evidence" that service was insufficient. *Id.*

Here, the relevant proofs of service state that the process server "left the summons at the individual's residence or place of abode with Delores Villa . . . a person of suitable age and discretion who resides there, on 4/17/2017, and mailed a copy to the individual's last known address." *See* Doc. Nos. 5, 6, 7, 10.  Specifically, the proofs of service all state that the process server went to the same address in Maywood, California three times in April 2017, but was unable to contact anyone at that location.  The process server states that she went back a fourth time, and "Sub-served Dolores Villa, Co-Tenant." *See* Doc. Nos. 5, 6, 7, 10.  She states that it was "[v]ery hard getting information from" Ms. Villa, and that Ms. Villa "did not want to answer any questions about defendants." *See* Doc. Nos. 5, 6, 7, 10.  While the proofs of service may be prima facie evidence of proper service, Defendants Escamilla, Jimenez, and Martinez declare under penalty of perjury that they do not live at the address that the process server visited, and that they have never lived at that address. *See* Doc. No. 14.  Defendant German declares under penalty of perjury that she formerly lived at that address, but has not lived there since June 2016. *See* Doc. No. 15.  Accordingly, Defendants produce evidence demonstrating that service was insufficient.

Plaintiff does not provide evidence to the contrary, and its arguments in response are unpersuasive.  Plaintiff argues Defendants have not met their burden to show service was insufficient because Defendants "do not provide any evidence as to where their purported dwelling or usual place of abode is, if not at the property where they were served." *See* Doc. No. 25.  However, where Defendants do reside is beside the point for our purposes.  In this instance, the propriety of the method of service used turns on whether the address that the process server visited constituted Defendants' "residence or place of abode," and Defendants explicitly deny that they lived at that address in April 2017. *See* Doc. Nos. 5, 6, 7, 10.  Second, Plaintiff argues it has made a prima facie case of proper service because Defendants clearly received notice and have filed motions to dismiss based on the merits of Plaintiff's claims.  However, actual notice is insufficient to provide personal jurisdiction over Defendants. *See Vasic*, 2013 WL 12076475, at *2.

1    In sum, the uncontroverted evidence indicates that service of process was

2    insufficient as to Defendants Escamilla, Jimenez, Martinez, and German.  However, in its

3    discretion, the Court declines to dismiss this action against them.  Instead, the Court

4    **QUASHES SERVICE** as to Defendants Escamilla, Jimenez, Martinez, and German.  As

5    such, the Court **DENIES AS MOOT** Defendants Escamilla, Jimenez, Martinez, and

6    German's motions to dismiss, Doc. Nos. 14, 15, and **DENIES AS MOOT** Defendant

7    German's motion to strike, Doc. No. 16.[5]

8    **B.    Motions to Dismiss for Failure to State a Claim**

9    The Court turns to those motions filed by properly served defendants.  In

10   particular, Defendants Munoz, Nash, Simas, Macias, and Leon move to dismiss all of the

11   causes of action against them.  Because the Court's jurisdiction over this action is based

12   on federal question jurisdiction, the Court begins by addressing the sufficiency of

13   Plaintiff's federal claims.

14   *i.    Defend Trade Secrets Act of 2016*

15   Plaintiff alleges a claim for violation of the Defend Trade Secrets Act of 2016.  On

16   May 11, 2016, Congress enacted the DTSA, which creates a civil cause of action for

17   owners of trade secrets that are misappropriated "if the trade secret is related to a product

18   or service used in, or intended for use in, interstate or foreign commerce."  *See Cave*

19   *Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-CV-02177-SI, 2017 WL

20   1436044, at *3 (N.D. Cal. Apr. 24, 2017); 18 U.S.C. § 1836(b)(1).  The DTSA only

21   provides a cause of action for acts that occurred on or after the date of its enactment.  *See*

22   *Cave Consulting Grp., Inc.*, 2017 WL 1436044, at *3; *Wang v. Golf Tailor, LLC*, No. 17-

23   CV-00898-LB, 2017 WL 2861111, at *4 (N.D. Cal. July 5, 2017).  "Trade secret" is

24   defined as "all forms and types of financial, business, scientific, technical, economic, or

25   engineering information, including patterns, plans, compilations, program devices,

26

27   _____

28   [5] For that reason, the Court also **OVERRULES** Plaintiff's evidentiary objections to Defendant German's declaration filed in support of her motion to strike.  *See* Doc. No. 27.

formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes" so long as that information "derives value from being secret," and "the owner took reasonable measures to keep [it] secret." *See* 18 U.S.C. § 1839(3); *Cave Consulting Grp., Inc.*, 2017 WL 1436044, at *3. "Misappropriation" includes both the "acquisition of a trade secret" "by a person who knows or has reason to know that the trade secret was acquired by improper means" and "disclosure or use of a trade secret . . . without express or implied consent by a person who [] used improper means to acquire knowledge of the trade secret," or "knew or had reason to know that the knowledge" was gained through a person who had improperly acquired it or owed a duty to maintain its secrecy. *See* 18 U.S.C. § 1839(5). In sum, the DTSA "contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *See Cave Consulting Grp., Inc.*, 2017 WL 1436044, at *4; 18 U.S.C. § 1839(5).

Here, insofar as Plaintiff wishes to assert theories of liability based on the acquisition and disclosure of trade secrets, Plaintiff does not sufficiently allege claims based on conduct occurring after the enactment of the DTSA. Although the Complaint states in conclusory fashion that the "misappropriation appears to have begun on or around April 5, 2016, and was ongoing until February 2017," the Complaint does not include any fact-specific allegations of conduct amounting to acquisition or disclosure of purported trade secrets occurring after April 2016. Rather, the Complaint focuses on conduct occurring in or prior to April 2016. For example, Plaintiff alleges Defendant German began working at Physician's Surrogacy in April 2016, and "immediately" thereafter planned to terminate her employment and form a competing agency. *See* Compl. ¶ 23. The Complaint states that one of the defendants created an email address "in or around early 2016," which Defendants used to email "a significant amount of the proprietary information and trade secrets . . . from [Plaintiff's] computers and work email accounts." *See* Compl. ¶ 24. Further, Plaintiff alleges Defendant German sent emails "with copies of proprietary information" to Defendant Martinez "on or around April 29, 2016." *See* Compl. ¶ 24. Those allegations constitute essentially all of the Complaint's

1  factual allegations regarding alleged acquisition and disclosure of purported trade secrets.

2  As such, the Court is left only with Plaintiff's conclusory statement that

3  "misappropriation . . . was ongoing until February 2017," which is insufficient to state a

4  claim for violation of the DTSA arising after its enactment.

5      As the Complaint is currently pleaded, Plaintiff also fails to sufficiently state a use-

6  based claim arising out of actions occurring after the DTSA's enactment.  "Nothing

7  suggests that the DTSA forecloses a use-based theory simply because the trade secret

8  being used was misappropriated before the DTSA's enactment."  *See Cave Consulting*

9  *Grp., Inc.*, 2017 WL 1436044, at *4.  Regarding Defendants' use of potentially

10 proprietary information, Plaintiff alleges Defendants stole "lists of Plaintiff's surrogates

11 and potential surrogates," and emailed some of those individuals.  *See* Compl. ¶¶ 24, 26,

12 27.  Even assuming that Plaintiff's lists of surrogates and potential surrogates constitute

13 trade secrets, the Complaint does not state when Defendants sent emails to surrogates and

14 potential surrogates or whether those recipients were included in the allegedly

15 misappropriated lists.  Further, insofar as Plaintiff wishes to assert a use-based claim

16 based on Defendants' competing surrogacy agency, the Complaint fails to allege what, if

17 any, misappropriated trade secrets Defendants used in creating and running their

18 competing agency.

19     As an aside, the Court notes that in coming to the above conclusions, the Court

20 applies general pleading standards, which require plausibility as opposed to particularity.

21 In other words, the Court finds unpersuasive Defendants' argument that Plaintiff must

22 plead DTSA claims with particularity, as is required of plaintiffs asserting claims under

23 California's Uniform Trade Secrets Act ("CUTSA").  *See* David Bohrer, *Threatened*

24 *Misappropriation of Trade Secrets: Making A Federal (DTSA) Case Out of It*, 33 Santa

25 Clara High Tech. L. J. 506, 521 (2017) (stating that the DTSA "does not incorporate the

26 requirement . . . that . . . the plaintiff must identify its relevant trade secrets with

27 'reasonable particularity'").  Even under general pleading standards, Plaintiff's claims

28 lack sufficient detail with regard to any conduct that may have occurred after May 11,

1   2016.

2         As such, the Court **GRANTS** Defendants Munoz, Nash, Simas, Macias, and

3   Leon's request for dismissal of the DTSA claims, and **DISMISSES** those claims without

4   prejudice, and with leave to amend.

5              *ii.*     *Violation of the Federal Computer Fraud and Abuse Act*

6         The Computer Fraud and Abuse Act ("CFAA"), a federal statute, "was originally

7   designed to target hackers who accessed computers to steal information or to disrupt or

8   destroy computer functionality, as well as criminals who possessed the capacity to

9   'access and control high technology processes vital to our everyday lives . . . .'" *See*

10  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130 (9th Cir. 2009) (citing 1131 H.R.

11  Rep. 98–894, 1984 U.S.C.C.A.N. 3689, 3694 (July 24, 1984)).  "The CFAA prohibits a

12  number of different computer crimes, the majority of which involve accessing computers

13  without authorization or in excess of authorization, and then taking specified forbidden

14  actions, ranging from obtaining information to damaging a computer or computer data."

15  *See Brekka*, 581 F.3d at 1131; 18 U.S.C. § 1030(a)(1)–(7).

16        Relevant here, section 1030(a)(4) provides for the punishment of any individual

17  who "knowingly and with intent to defraud, accesses a protected computer without

18  authorization, or exceeds authorized access, and by means of such conduct furthers the

19  intended fraud and obtains anything of value . . . ." *See Brekka*, 581 F.3d at 1131; 18

20  U.S.C. § 1030(a)(4).  Section 1030(g) of the act provides a private right of action for

21  individuals who have been injured by the crimes delineated by the Act so long as the

22  defendant's conduct involves one of the factors set forth in section 1030(c)(4)(A)(i),

23  subclause (I), (II), (III), (IV), or (V).  *See Brekka*, 581 F.3d at 1131; 18 U.S.C. § 1030(g).

24  Subclause (I) proscribes conduct that causes a loss of at least $5,000 to one or more

25  persons during any one-year period.  *See* 18 U.S.C. § 1030(c)(4)(A)(i)(I).  Thus, to bring

26  a civil action for a violation of § 1030(a)(4), a plaintiff must show that the defendant: "(1)

27  accessed a 'protected computer,' (2) without authorization or exceeding such

28  authorization that was granted, (3) 'knowingly' and with 'intent to defraud,' and thereby

1   (4) 'further[ed] the intended fraud and obtain[ed] anything of value,' causing (5) a loss to

2   one or more persons during any one-year period aggregating at least $5,000 in value."

3   *See Brekka*, 581 F.3d at 1131; 18 U.S.C. §§ 1030(a)(4), (g).

4   　　In the Complaint, Plaintiff alleges Defendants German, Nash, Simas, Macias,

5   Munoz, Escamilla, Jimenez, and Martinez violated section 1030(a)(4) of the CFAA.

6   Because the Court quashes service as to Defendants German, Escamilla, Jimenez, and

7   Martinez, the Court only addresses Plaintiff's claims as to Defendants Nash, Simas,

8   Macias, and Munoz, who were all formerly employees of Plaintiff.[6]  Defendants argue

9   Plaintiff fails to state a claim for violation of the CFAA because Plaintiff does not

10  sufficiently allege Defendants exceeded their authorized access.  The CFAA

11  contemplates liability for those who access protected computers "without authorization,

12  or exceed[] authorized access."  *See* 18 U.S.C.A. § 1030(a)(4).  Pursuant to the Act, "the

13  term 'exceeds authorized access' means to access a computer with authorization and to

14  use such access to obtain or alter information in the computer that the accesser is not

15  entitled so to obtain or alter."  *See* 18 U.S.C.A. § 1030(e)(6).  In other words "an

16  individual who is authorized to use a computer for certain purposes but goes beyond

17  those limitations . . . has exceeded authorized access."  *See Brekka*, 581 F.3d at 1133

18  (internal quotations and alterations omitted).  "On the other hand, a person who uses a

19  computer 'without authorization' has no rights, limited or otherwise, to access the

20  computer in question."  *Id.*

21  　　The Complaint alleges Plaintiff "provided [Defendants] access" to Plaintiff's

22  "protected computer . . . for the limited purpose of performing their duties and

23  responsibilities as employees of Plaintiff."  *See* Compl. ¶ 88.  The Complaint alleges

24  Defendants' access was "unauthorized," however, because Defendants accessed

25  Plaintiff's protected computer with the intent to misappropriate trade secrets and

26

27

28  [6] As such, any reference to "Defendants" in this subsection refers to Defendants Nash, Simas, Macias, and Munoz.

1    proprietary information, did in fact do so, and thereby violated Defendants' contractual

2    obligations and common law duties to Plaintiff.  *See* Compl. ¶¶ 88, 89.

3         Based on the foregoing, Plaintiff fails to allege Defendants' were "without

4    authorization" or "exceeded authorization" in accessing the computer.  "[A]n employer

5    gives an employee 'authorization' to access a company computer when the employer

6    gives the employee permission to use it."  *Brekka*, 581 F.3d at 1133.  Here, Plaintiff

7    admits it gave Defendants permission to use the computer.  Further, Plaintiff does not

8    allege Defendants obtained or altered any information on the computer that Defendants

9    were not authorized to access or alter.  Moreover, the Ninth Circuit has explicitly rejected

10   the argument that "authorization to use a computer ceases when an employee resolves to

11   use the computer contrary to the employer's interest," or that an employee exceeds

12   authorization "if the defendant breaches a state law duty of loyalty to an employer."  *Id.*

13   at 1133, 1135 n.7.  The CFAA does not give rise to liability where "an employee is

14   authorized to access information while employed and then later misuses the information

15   because the CFAA governs unauthorized access rather than use."  *See Astec Am. LLC v.*

16   *Li*, No. 14CV1457 JLS (NLS), 2014 WL 12516024, at *3 (S.D. Cal. Nov. 17, 2014).

17   "[T]he CFAA is not meant to serve as a supplement or replacement for misappropriation

18   claims."  *Lakeland Tours, LLC v. Bauman*, No. 13CV2230-CAB-JMA, 2014 WL

19   12570970, at *4 (S.D. Cal. Feb. 11, 2014).

20        As such, the Court **GRANTS** Defendants Nash, Simas, Macias, and Munoz's

21   motion to dismiss Plaintiff's CFAA claims, and **DISMISSES** Plaintiff's CFAA claims

22   against those defendants without prejudice and with leave to amend.  *See* Doc. Nos. 4, 19.

23              *iii.*    *Plaintiff's State Law Claims*

24        "A district court 'may decline to exercise supplemental jurisdiction' if it 'has

25   dismissed all claims over which it has original jurisdiction.'"  *See Sanford v.*

26   *MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)).

27   "[I]n the usual case in which all federal-law claims are eliminated before trial, the

28   balance of factors to be considered under the pendent jurisdiction doctrine—judicial

1  economy, convenience, fairness, and comity—will point toward declining to exercise

2  jurisdiction over the remaining state-law claims." *Id.* (quoting *Carnegie–Mellon Univ. v.*

3  *Cohill*, 484 U.S. 343, 350 n.7 (1988), *superseded on other grounds by statute as*

4  *recognized in Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557 (10th Cir. 2000)).

5       Plaintiff also asserts numerous California state law claims.  However, because

6  Plaintiff fails to state a claim over which the Court has original jurisdiction, the Court

7  declines to exercise supplemental jurisdiction over Plaintiff's state law claims at this

8  time.  *See Shames v. Hertz Corp.*, No. 07-CV-2174 H, 2008 WL 11318291, at *5 (S.D.

9  Cal. Apr. 8, 2008).  The Court **DISMISSES** Plaintiff's supplemental state law claims

10  without prejudice as to all properly served Defendants.  If Plaintiff sufficiently alleges a

11  federal claim in a future amended complaint, the Court will reconsider exercising

12  supplemental jurisdiction over Plaintiff's state law claims.

13         *iv.*   *Defendants' Requests for Judicial Notice*

14       In support of their motion to dismiss, Defendants Nash, Simas, and Munoz request

15  judicial notice of a copy of a PIIAA agreement, a copy of the Recommendations for

16  Practices Utilizing Gestational Carriers by the American Society for Reproductive

17  Medicine, and a copy of an Ethics Committee opinion regarding "consideration of the

18  gestational carrier."  *See* Doc. No. 4-2.  However, judicial notice of these documents is

19  unnecessary for the instant purposes, as the Court finds dismissal is proper without

20  reference to those documents.  *See Kuzmenko v. Lynch*, 606 F. App'x 399 (9th Cir. 2015)

21  ("[J]udicial notice is inappropriate where the facts to be noticed are not relevant to the

22  disposition of the issues before the court.").  Accordingly, the Court declines to take

23  judicial notice of the proffered documents.

24     **C.**   **Motions to Strike**

25       Defendants German and Leon move to strike Plaintiff's trade libel claims pursuant

26  to California's anti-SLAPP statute, California Code of Civil Procedure § 425.16.

27  However, as noted above, the Court dismisses Defendant German's motion to strike

28  without prejudice because the Court quashes service as to Defendant German.  Regarding

Defendant Leon's motion, the Court declines to address the propriety of her motion to strike at this stage based on the Court's dismissal without prejudice of all claims against those Defendants who were properly served.  "[G]ranting a defendant's anti-SLAPP motion to strike a plaintiff's *initial* complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment."  *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (emphasis added).  This outcome does not cause prejudice to defendants because "the purpose of the anti-SLAPP statute, the early dismissal of meritless claims, would still be served if plaintiffs eliminated the offending claims from their original complaint."  *See id.*  "If the offending claims remain in the first amended complaint, the anti-SLAPP remedies remain available to defendants."  *Id.*

In sum, because the Court dismisses the offending claim on other grounds, the Court **DENIES** without prejudice Defendant Leon's motion to strike.

### D.   Motion for Preliminary Injunction

Plaintiff moves for a preliminary injunction based on its claims for violation of the DTSA, unfair competition, breach of contract, and conversion.  However, as discussed, the Court dismisses all claims against those Defendants who were properly served without prejudice and with leave to amend.  Accordingly, Plaintiff has not shown a likelihood of success or serious questions going to the merits of Plaintiff's claims.  *See Winter*, 555 U.S. at 20 (stating that a plaintiff seeking a preliminary injunction must generally establish a likelihood of success); *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (stating that, alternatively, a plaintiff may demonstrate "serious questions going to the merits," meaning at least a "fair chance of success on the merits," and that equities tip sharply in the plaintiff's favor).

Based on the foregoing, the Court **DENIES** without prejudice Plaintiff's motion for a preliminary injunction.  *See* Doc. No. 13; *see Shames*, 2008 WL 11318291 at *5 (denying without prejudice motion for preliminary injunction on basis that the court dismissed without prejudice all federal claims and declined to exercise supplemental

1  jurisdiction over state law claims); *Youngevity Int'l Corp. v. Smith*, No. 16-CV-0704 W

2  (JLB), 2016 WL 7626582, at *5 (S.D. Cal. June 29, 2016); *Kwai Ling Chan v. Chase*

3  *Home Loans Inc.*, No. C12-0273JLR, 2012 WL 1252649, at *2 (W.D. Wash. Apr. 13,

4  2012).

5  <u>CONCLUSION</u>

6      For the foregoing reasons, the Court **QUASHES SERVICE** as to Defendants

7  Escamilla, Jimenez, Martinez, and German.  As such, the Court **DENIES AS MOOT**

8  Defendants Escamilla, Jimenez, Martinez, and German's motions to dismiss, Doc. Nos.

9  14, 15, and **DENIES AS MOOT** Defendant German's anti-SLAPP motion to strike,

10  Doc. No. 16.  Further, as set forth above, the Court **DISMISSES** without prejudice all

11  remaining claims as to properly served Defendants.  The Court also **DENIES** without

12  prejudice Defendant Leon's anti-SLAPP motion to strike, Doc. No. 18, and **DENIES**

13  without prejudice Plaintiff's motion for a preliminary injunction, Doc. No. 13.

14      The Court further **ORDERS** that Plaintiff must file an amended complaint, if any,

15  on or before **September 22, 2017**.[7]

16      **IT IS SO ORDERED.**

17

18  Dated:  August 23, 2017

19                      Hon. Michael M. Anello
                    United States District Judge

---

[7] The Court further notes that Plaintiff must comply with Civil Local Rule 15.1(c) in doing so. Specifically, Rule 15.1(c) states that "[a]ny amended pleading filed after the granting of a motion to dismiss or motion to strike with leave to amend, must be accompanied by a version of that pleading that shows---through redlining, underlining, strikeouts, or other similarly effective typographic methods--- how that pleading differs from the previously dismissed pleading." Civ. LR 15.1(c).